In the Matter of Disciplinary Proceedings Against
Thomas A. Fadner, II, Attorney at Law:

Office of Lawyer Regulation, Complainant,

v.

Thomas A. Fadner, II, Respondent.

Supreme Court

*No. 2005AP3005–D. Decided February 7, 2007.*

2007 WI 18

(Also reported in 727 N.W.2d 20.)

¶ 1. PER CURIAM.   We review the referee's report and recommendation that the license of Attorney Thomas A. Fadner, II, to practice law in Wisconsin be revoked and that Attorney Fadner be ordered to pay restitution to the Wisconsin Lawyers' Fund for Client Protection (the Fund) in the amount of $12,500. Based on our independent review of the matter, we adopt the referee's findings of fact and conclusions of law, which were made after entering a default judgment against Attorney Fadner. We agree that Attorney Fadner's license to practice law in this state must be revoked. We also agree that restitution is in order, but we determine that in addition to the restitution payment to the Fund, Attorney Fadner should also make restitution payments to clients G.T. and D.R. Finally, we conclude that Attorney Fadner should pay the costs of this disciplinary proceeding, which totaled $1758.16, as of July 26, 2006.

¶ 2.   Attorney Fadner was admitted to practice in Wisconsin in April 1996. He most recently practiced in Oshkosh. He has been subject to discipline on two prior occasions. He received a private reprimand in 1998. In January 2005 this court temporarily suspended Attorney Fadner's license as a result of his willful failure to cooperate with the Office of Lawyer Regulation (OLR) in at least three grievance investigations. In February 2006 the court suspended Attorney Fadner's license to practice law for nine months, and until further order of this court, effective March 30, 2006. *See In re Disciplin-*

*ary Proceedings Against Fadner*, 2006 WI 18, 289 Wis. 2d 1, 709 N.W.2d 868. That suspension related to Attorney Fadner's misconduct concerning billings to the Office of the State Public Defender and his mishandling of payments due to an investigator. Attorney Fadner's license remains suspended.

¶ 3. On December 8, 2005, the OLR filed the complaint in the present case. The OLR's complaint alleged 45 separate counts of misconduct arising from 10 different representations.

¶ 4. The OLR made multiple attempts to serve the complaint and order to answer on Attorney Fadner, both via personal service through sheriff's departments and via certified mail at multiple addresses. Having made reasonably diligent attempts to serve Attorney Fadner, the OLR moved for a finding of default. Notice of the hearing on the OLR's default motion was sent to the last known address Attorney Fadner had provided to the State Bar of Wisconsin, but Attorney Fadner did not respond or appear at the hearing. On April 26, 2006, Referee Kim M. Peterson granted the OLR's default motion.

¶ 5. The referee subsequently filed a report finding the facts as alleged in the OLR's complaint and concluding that Attorney Fadner had committed each of the 45 counts of misconduct. Based on the conclusions of misconduct, the referee recommended that Attorney Fadner's license to practice law in this state be revoked. The referee also recommended that Attorney Fadner be ordered to reimburse the Fund in the total amount of $12,500 for payments it had made to five of Attorney Fadner's clients due to his misconduct.

¶ 6. Attorney Fadner did not appeal from the referee's report and recommendation. Thus, we proceed

57

with our review of the matter pursuant to SCR 22.17(2).[1] We will affirm the referee's findings of fact unless they are clearly erroneous. *See In re Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). We review the referee's conclusions of law, however, on a de novo basis. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. We determine the level of discipline that is appropriate under the particular circumstances, independent of the referee's recommendation, but benefiting from it. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 7. As noted above, the findings of misconduct relate to ten separate client matters. We will briefly summarize the referee's findings of fact concerning those representations and the accompanying legal conclusions of professional misconduct.

¶ 8. With respect to Counts 1–3, Attorney Fadner was retained in a paternity matter pending before Waupaca County Circuit Judge Raymond Huber. At a child support hearing on September 26, 2002, Attorney Fadner told the court that, although most issues concerning child placement had been resolved, the parties wished to stipulate to a change in a previous order issued by a family court commissioner. Under Waupaca County Circuit Court Rule 8.14, Attorney Fadner was

[1] SCR 22.17(2) provides:   Review: appeal.

(2) If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

required to prepare an order for the court's signature memorializing the stipulation. Attorney Fadner did not prepare the order.

¶ 9. When Judge Huber subsequently noticed that Attorney Fadner had not prepared the order, he sent a letter to Attorney Fadner advising him to file the required order within seven days. Although Attorney Fadner and Judge Huber exchanged telephone messages, Attorney Fadner did not file the order as required. The court then issued an order to show cause requiring Attorney Fadner to appear in person on July 22, 2004, unless the order was filed before then. Attorney Fadner failed to file the order or to appear at the July 22, 2004 hearing.

¶ 10. After yet another letter from the court and no response by Attorney Fadner, Judge Huber referred Attorney Fadner to the OLR. The OLR sent letters to Attorney Fadner on September 15 and October 14, 2004, seeking a response to Judge Huber's letter. Although Attorney Fadner signed for a certified copy of one of the letters, he never responded to the OLR.

¶ 11. Based on these facts, the referee concluded that, contrary to SCR 20:3.4(c),[2] Attorney Fadner had knowingly disobeyed an obligation under the rules of a tribunal on two separate occasions—once when he failed to submit the order as required by the local rule and Judge Huber's letter, and once when he failed to respond to the order to show cause or appear at the hearing. The referee further found that Attorney Fad-

---

[2] SCR 20:3.4(c) provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

59

ner had violated SCR 22.03(2) and (6),[3] thereby also violating SCR 20:8.4(f),[4] by failing to file a written response to the grievance and by failing otherwise to cooperate with the OLR's investigation.

¶ 12. Counts 4–11 relate to Attorney Fadner's representation of client G.T. In April 2004 G.T. met with Attorney Fadner and retained him to represent her in a post-divorce matter, which included an issue regarding where G.T.'s daughter should be enrolled for preschool. G.T. gave Attorney Fadner a $1000 retainer, but there was no written retainer agreement. Attorney Fadner failed to deposit the retainer in his client trust account. Attorney Fadner promised G.T. that he would draft a motion and supporting affidavit within two weeks. He did not draft and file the papers as promised. After not hearing from Attorney Fadner, G.T. began calling Attor-

---

[3] SCR 22.03(2) and (6) provide:    Investigation.

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[4] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

ney Fadner's office twice a week to inquire about the status of her case. Attorney Fadner never responded to these telephone messages. Although G.T.'s judgment of divorce stated that the guardian ad litem (GAL) had the power to determine which preschool the child would attend, Attorney Fadner never contacted the GAL or the child's father to discuss the matter. G.T. ultimately terminated Attorney Fadner's representation on May 21, 2004.

¶ 13.    Attorney Fadner's billing records indicate that he charged G.T. $961.90 for work he claims to have done. The referee concluded that Attorney Fadner's fees were unreasonable in many respects, including the fact that approximately half of the fees were allegedly incurred after G.T. had terminated the representation. In addition, in the documents that Attorney Fadner did prepare, but never filed, he made numerous obvious errors, including referring to the proceeding as a paternity matter and failing to provide notice as to what issue the motion addressed. In other words, the documents that had been drafted were of no benefit to G.T. Nonetheless, when G.T. requested a refund of the $1000 retainer, Attorney Fadner failed to respond.

¶ 14.    Attorney Fadner failed to respond to the OLR's requests for a written supplemental response to G.T.'s grievance and for specific additional information.

¶ 15.    The referee concluded that Attorney Fadner had failed to provide competent representation to G.T., in violation of SCR 20:1.1.[5] In addition, by failing to contact the GAL or the father and by failing to prepare and file the motion and supporting affidavit as prom-

[5] SCR 20:1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

ised, Attorney Fadner violated SCR 20:1.3.[6] The referee further ruled that Attorney Fadner had failed to keep G.T. reasonably informed about the status of her case and to respond promptly to her requests for information, in violation of SCR 20:1.4(a).[7] By claiming that he had earned almost all the $1000 retainer when many of his claimed charges were clearly unreasonable, Attorney Fadner violated SCR 20:1.5(a).[8] The referee further determined that Attorney Fadner's failure to deposit G.T.'s retainer into his trust account had violated

[6] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[7] SCR 20:1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[8] SCR 20:1.5(a) states:  Fees

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

former SCR 20:1.15(a).[9] The referee also found that by failing to refund any portion of the $1000 retainer, Attorney Fadner had violated SCR 20:1.16(d).[10] The referee further concluded that Attorney Fadner had violated SCR 22.03(6), thereby also violating SCR 20:8.4(f), by failing to file a written supplemental response to the grievance even after this court had issued an order to show cause, and had temporarily suspended his license to practice law. Finally with respect to G.T., the referee ruled that Attorney Fadner's failure to respond to the OLR's district committee

[9] Former SCR 20:1.15 applies to misconduct committed prior to July 1, 2004. Former SCR 20:1.15(a) provided:

(a) A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust funds .... The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. . . .

[10] SCR 20:1.16(d) provides: Declining or terminating representation

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

investigator had violated SCR 22.04,[11] thereby also violating SCR 20:8.4(f).

¶ 16.   Counts 12–18 relate to Attorney Fadner's representation of client M.C. concerning a pro se motion to modify the placement of her child that she had filed in a pending paternity action. M.C. retained Attorney Fadner to assist her with the motion, giving him a $100 retainer. Although Attorney Fadner told M.C. that he would charge by the hour, he failed to explain his rates or how she would be billed. Although Attorney Fadner appeared at hearings on January 30, 2004, and February 19, 2004, he intentionally chose not to appear at a March 3, 2004 hearing, even though he had notice of that proceeding. M.C. then terminated Attorney Fadner's representation.

¶ 17.   Although M.C. left telephone messages on multiple occasions and even personally went to Attorney Fadner's office to demand a refund of her retainer, he did not respond. Ultimately, in August 2004 M.C. received a letter from Attorney Fadner dated May 14, 2004, that contained an invoice dated July 15, 2004. The invoice contained a number of charges for services allegedly rendered after March 3, 2004, when M.C. had terminated the representation. In addition, his July 15, 2004 invoice showed at least six different hourly rates.

¶ 18.   After M.C. filed a grievance with the OLR and the OLR contacted Attorney Fadner, he submitted a revised invoice, dated November 12, 2004, purportedly showing all of the work that he had performed on M.C.'s behalf. The November 12, 2004 invoice was

---

[11] SCR 22.04 provides in relevant part:   "(1) The director may refer a matter to a district committee for assistance in the investigation. The respondent has the duty to cooperate specified in SCR 21.15(4) and 22.03(2) in respect to the district committee. . . ."

substantially different from the earlier July 15, 2004 invoice, including the fact that the balance due was now over $230 higher. The November 12, 2004 invoice was similar to the previous one in that it still included many charges allegedly incurred after March 3, 2004. The referee found that a substantial number of the charges were material misstatements and that Attorney Fadner had failed to properly supervise his staff or review the billing statements before they had been issued.

¶ 19. The OLR sent multiple letters to Attorney Fadner requesting a response to the grievance and seeking the production of specific information. Although Attorney Fadner did file one belated and insufficient response after this court issued an order to show cause why his license should not be temporarily suspended for failure to cooperate with the OLR's investigation, Attorney Fadner did not provide the information requested by the OLR and failed to fully and fairly disclose the facts and circumstances surrounding his alleged misconduct. Indeed, much of what he told the OLR's investigator during an in-person interview turned out to be not true.

¶ 20. In light of these facts, the referee concluded that Attorney Fadner had violated SCR 20:1.3 when he failed to appear at a scheduled hearing before a family court commissioner. The referee also found that Attorney Fadner had violated SCR 20:1.4(a) by failing to keep M.C. apprised of the status of her case. The referee further determined that Attorney Fadner's failure to inform M.C. of the rates that he and his assistants would charge and to explain how she would be billed, as well as his intentionally vague estimate of the total fees, had violated SCR 20:1.5(b).[12] Finally with respect to M.C.,

[12] SCR 20:1.5(b) states that "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall

the referee found that by failing to supervise his staff and to review billing statements that contained misrepresentations regarding the work performed, Attorney Fadner had violated SCR 20:5.3(b) and (c)(1).[13]

¶ 21. Counts 19–23 concern Attorney Fadner's representation of Darryl B. concerning a possible claim for wrongful termination of employment. Darryl B. paid Attorney Fadner $75 for an initial consultation in November 2004. When Darryl B. called Attorney Fadner again in December 2004, they scheduled a meeting for January 10, 2005, although Attorney Fadner did not remember having met with Darryl B. or the substance of his legal issue.

¶ 22. Pursuant to Attorney Fadner's request, Darryl B. paid a $1500 retainer fee to Attorney Fadner on January 10, 2005. Although Attorney Fadner promised Darryl B. that he would send a letter describing the services to be provided for that fee, Darryl B. never received any such letter. Indeed, after the January 10, 2005 meeting, Darryl B. never heard from Attorney Fadner again, although he tried on numerous occasions to communicate with Attorney Fadner.

be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation."

[13] SCR 20:5.3 provides in relevant part: Responsibilities regarding nonlawyer assistants

(b) A lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

(c) A lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved.

¶ 23. Attorney Fadner negotiated Darryl B.'s check on January 11, 2005. On that same day, this court temporarily suspended Attorney Fadner's license to practice law. Attorney Fadner did not notify Darryl B. that his license had been suspended or take any action to assist Darryl B. in locating other counsel. In addition, Attorney Fadner did not file an affidavit with the OLR showing that he had complied with his post-suspension obligations. Attorney Fadner also did not respond to the OLR's letters seeking information about the grievance filed by Darryl B. He also never refunded any part of Darryl B.'s $1500 retainer. Instead, Darryl B. was forced to file a claim with the Fund, which paid him $1500 as reimbursement for his loss.

¶ 24. According to the referee's conclusions of law, Attorney Fadner's failure to refund Darryl B.'s $1500 payment, which Attorney Fadner never earned, violated SCR 20:1.16(d). The referee also found that by taking Darryl B.'s money when his law license was about to be suspended for non-cooperation with the OLR's investigations and by using that money for his own purposes, Attorney Fadner had engaged in dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).[14] Attorney Fadner's failure to respond to the OLR's requests for information and documents constituted a violation of SCR 22.03(2), which in turn violated SCR 20:8.4(f). In addition, the referee concluded that Attorney Fadner had violated SCR 22.26(1)(a) and (b),[15] thereby also violating SCR 20:8.4(f), when he failed to

[14] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[15] SCR 22.26(1)(a) and (b) provide: Activities following suspension or revocation.

notify Darryl B. of his suspension or advise him to seek legal representation from another attorney. Finally, the referee found that Attorney Fadner's failure to file an affidavit showing compliance with his post-suspension obligations had violated SCR 22.26(1)(e),[16] actionable through SCR 20:8.4(f).

¶ 25. Count 24 of the OLR's complaint relates to the representation of client T.L. At the time of Attorney Fadner's temporary suspension, he was representing T.L. in a divorce proceeding in Winnebago County Circuit Court. Approximately one month after the suspension, the court received a draft document entitled "Findings of Fact, Conclusions of Law and Judgment" in

---

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall . . . :

    (a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation.

    (b) Advise the clients to seek legal advice of their choice elsewhere.

[16] SCR 22.26(1)(e) provides:

(e) Within 25 days after the effective date of suspension or revocation, file with the director an affidavit showing all of the following:

    (i) Full compliance with the provisions of the suspension or revocation order and with the rules and procedures regarding the closing of the attorney's practice.

    (ii) A list of all jurisdictions, including state, federal and administrative bodies, before which the attorney is admitted to practice.

    (iii) A list of clients in all pending matters and a list of all matters pending before any court or administrative agency, together with the case number of each matter.

T.L.'s divorce. The document had Attorney Fadner's name on an approval line and was accompanied by an unsigned cover letter purportedly from Attorney Fadner. The court did not accept the documents because of Attorney Fadner's suspension, and T.L. completed the divorce on a pro se basis. When the OLR sent letters to Attorney Fadner requesting his response to its investigation of this matter, Attorney Fadner failed to respond.

¶ 26. The referee concluded that Attorney Fadner's failure to file a written response to the OLR's investigative letters had constituted a violation of SCR 22.03(2), thereby also violating SCR 20:8.4(f).

¶ 27. Counts 25–29 relate to D.R., an out-of-state resident. D.R. retained Attorney Fadner in 2004 to represent her regarding a placement dispute concerning her two sons. On November 12, 2004, she paid a $1200 retainer to Attorney Fadner.

¶ 28. A hearing on the placement dispute was scheduled for November 16, 2004, in Green Lake. Although D.R. arrived at Attorney Fadner's office well in advance of the hearing, Attorney Fadner was not ready to leave for the hearing. As a result of Attorney Fadner's delay, they did not arrive at the courthouse until 15 minutes after the scheduled time. By that time, in light of D.R.'s failure to appear, the circuit court had already ruled in favor of the children's father, awarding him primary physical placement and requiring D.R. to pay child support. The court's orders, one for each child, did state that D.R. could file a motion to modify the placement, but she would have to show cause why the court's orders were inappropriate.

¶ 29. Attorney Fadner promised to order a transcript of the missed hearing and then to file a motion to reopen the placement. Thereafter, D.R., who had now lost physical placement of her children, attempted to

contact Attorney Fadner on numerous occasions. Either Attorney Fadner did not respond or he failed to provide any information about the status of her case.

¶ 30. On January 21, 2005, after the temporary suspension of Attorney Fadner's license, D.R. sent an e-mail to Attorney Fadner again seeking a response to her previous messages. Attorney Fadner sent a reply message on January 26, 2005, stating that he had been under the weather, that the court was supposed to get in touch with his assistant regarding the hearing transcript, that his assistant had quit the preceding week and that the work in his office was piling up. Attorney Fadner did not mention that his license to practice law had been temporarily suspended.

¶ 31. Although the circuit court issued a notice of hearing for March 1, 2005, and D.R. inquired about the hearing on multiple occasions, Attorney Fadner never responded to D.R.'s inquiries. Consequently, D.R. was forced to appear pro se at the hearing. Despite requests to do so, Attorney Fadner never returned any of D.R.'s $1200 retainer.

¶ 32. As with a number of other grievances, the OLR sent multiple letters to Attorney Fadner's last known address requesting a response to its grievance investigation. Attorney Fadner never responded to the OLR's letters.

¶ 33. The referee determined that in light of Attorney Fadner's failure to appear on a timely basis for the November 16, 2004 hearing, which had caused D.R. to lose physical placement of her children, and his failure thereafter to advance her case, Attorney Fadner had not demonstrated reasonable diligence and promptness, in violation of SCR 20:1.3. The referee also found that by failing (1) to respond to D.R.'s inquiries after his license suspension, (2) to assist her in obtaining other

legal representation, and (3) to refund any part of her $1200 retainer, Attorney Fadner had violated SCR 20:1.16(d). In addition, when Attorney Fadner falsely implied in his January 26, 2005 e-mail, after his license was suspended, that he was still practicing law and representing her, he violated SCR 20:8.4(c). The referee further concluded that Attorney Fadner's failure to advise D.R. that his law license had been suspended and that she should seek legal representation elsewhere had violated SCR 22.26(1)(a) and (b), thereby also violating SCR 20:8.4(f). Finally, Attorney Fadner's failure to respond to the OLR's letters violated SCR 22.03(2), actionable through SCR 20:8.4(f).

¶ 34. With respect to Counts 30–32, on March 29, 2004, R.B. retained Attorney Fadner on an unemployment compensation matter. R.B. gave Attorney Fadner a retainer of $2500 to be applied toward future fees. Although there was no written fee agreement, Attorney Fadner did inform R.B. that he would charge $179 per hour. According to credit union records for Attorney Fadner's trust account, Attorney Fadner never deposited R.B.'s retainer into his trust account.

¶ 35. After R.B. retained Attorney Fadner to represent him on the unemployment compensation matter, R.B. was charged with criminal drug violations. R.B. hired Attorney Fadner to represent him on those charges. The only act that Attorney Fadner undertook on either matter was to appear with R.B. at his initial appearance and bail hearing in the criminal matter on April 19, 2004.

¶ 36. In May 2004 R.B. terminated Attorney Fadner's representation, and Attorney Fadner then officially withdrew from the criminal case. Thereafter, both R.B. and his new attorney made repeated requests for a refund of R.B.'s $2500 retainer. Attorney Fadner

never responded. Ultimately, the Fund reimbursed R.B. for the $2500 he had given to Attorney Fadner.

¶ 37.   The OLR sent letters in March and April 2005 to the last office address that Attorney Fadner had provided to the State Bar. Attorney Fadner did not respond to those letters.

¶ 38.   With respect to the representation of R.B., the referee found that by ignoring the requests for a refund by R.B. and his successor counsel and by refusing to refund any of the $2500 retainer, Attorney Fadner had violated SCR 20:1.16(d). The referee also again determined that Attorney Fadner's failure to respond to the OLR's investigative letters had violated SCR 22.03(2) and SCR 20:8.4(f).

¶ 39.   Counts 33–37 relate to Attorney Fadner's representation of K.F. In April 2004 K.F. retained Attorney Fadner to represent her in a divorce proceeding. Attorney Fadner agreed that he would complete her divorce for a total fee of $1800. K.F. paid a total of $1500 during April, May and June 2004.

¶ 40.   Three hearings occurred in the divorce proceeding before a temporary order was issued in September 2004. At the first hearing, Attorney Fadner was nearly an hour late and failed to bring the correct financial statement for K.F., causing the hearing to be continued. The rescheduled hearing also did not go forward because Attorney Fadner had failed to properly serve K.F.'s husband with an order to appear. When K.F. contacted Attorney Fadner regarding the third hearing, he told her that he was not sure when the hearing was scheduled, but thought it was in October. The hearing was actually scheduled for September 28, 2004. K.F. ultimately learned of the correct date for the hearing from her husband. Once again, Attorney Fadner was substantially late for the hearing and arrived without

K.F.'s most recent financial statement, which she had mailed to him just one week earlier. Following this September 28, 2004 hearing, K.F. did not speak with Attorney Fadner again.

¶ 41.   Although Attorney Fadner's license had been temporarily suspended on January 11, 2005, Attorney Fadner failed to inform K.F. of that fact. K.F. learned of the suspension when she received a scheduling notice from the court with a note that it was being sent directly to her because of Attorney Fadner's suspension. Attorney Fadner did not respond to any of K.F.'s subsequent attempts to contact him or to her requests for a refund of at least a portion of her advance fee. K.F. indicated to the circuit court that she had no money to hire another attorney because she had used her money to pay Attorney Fadner's advance fee. Ultimately, K.F. submitted a claim to the Fund, which reimbursed her for the $1500 she had paid to Attorney Fadner as an advance fee.

¶ 42.   The OLR sent multiple letters to Attorney Fadner in March 2005 about K.F.'s grievance. Attorney Fadner did not respond.

¶ 43.   The referee concluded that Attorney Fadner's errors with the three hearings, including his tardiness, his failure to serve K.F.'s husband and his failure to bring the correct documentation to the hearings, had demonstrated a lack of diligence in representing K.F., contrary to SCR 20:1.3. The referee further found that Attorney Fadner had violated SCR 20:1.4(a) by failing to respond to K.F.'s requests about the status of her case and by failing to provide her with the proper date for the rescheduled hearing. In addition, the referee determined that Attorney Fadner's failure to respond to K.F.'s requests for information after the temporary suspension of his license and his failure to refund any part of the $1500 advance fee had constituted a violation of SCR

20:1.16(d). Further, the referee concluded that Attorney Fadner's failure to notify K.F. of the temporary suspension of his license to practice law had violated SCR 22.26(1)(a) and (b), thereby also violating SCR 20:8.4(f). Finally, the referee stated that Attorney Fadner's failure to respond to the OLR's letters about K.F.'s grievance had violated SCR 22.03(2), actionable through SCR 20:8.4(f).

¶ 44. Counts 38–41 of the OLR's complaint allege that in July 2004 J.R. retained Attorney Fadner in connection with a claim for wrongful termination. J.R. paid Attorney Fadner an advance fee of $2500. Attorney Fadner told J.R. that he would charge an hourly rate for his services. Attorney Fadner also promised that he would return any unused funds to J.R.

¶ 45. Based on information provided by J.R. and his wife, Attorney Fadner filed a discrimination complaint with the Equal Rights Division (ERD) of the Wisconsin Department of Workforce Development. In response, the ERD submitted questions to Attorney Fadner and asked him to produce certain documents potentially relevant to J.R.'s claim. When J.R. was unable to reach Attorney Fadner after multiple attempts, J.R. and his wife drafted the answers to the ERD's requests by themselves.

¶ 46. The ERD later submitted another round of requests for information. Attorney Fadner told J.R. that he would respond to the requests, but failed to do so. Instead, after receiving no assistance from Attorney Fadner, J.R. and his wife again drafted the answers on their own.

¶ 47. J.R. met with Attorney Fadner in late October 2004. Attorney Fadner then sent a letter to the ERD concerning the possible settlement of J.R.'s claim. J.R. never heard from Attorney Fadner again.

¶ 48. Although Attorney Fadner's license was temporarily suspended on January 11, 2005, he never communicated that fact to J.R. He also never returned the file or refunded any portion of the $2500 advance fee that J.R. had paid.

¶ 49. The ERD dismissed J.R.'s discrimination claim on February 23, 2005. J.R. tried on multiple occasions and via multiple means to contact Attorney Fadner about appealing the ERD's dismissal, which had to be accomplished within 30 days of its decision. Attorney Fadner never responded to J.R. As a result, J.R. was not able to file an appeal of the dismissal of his claim within the 30–day deadline. Indeed, it was only after J.R. contacted the OLR in April 2005 that he learned of Attorney Fadner's suspension. J.R. ultimately submitted a claim to the Fund for the $2500 he had paid to Attorney Fadner and received reimbursement of that amount.

¶ 50. The OLR sent certified and first-class letters to the most recent address that Attorney Fadner had provided to the State Bar. The letters were forwarded to an Omro post office box and then to an address in Sioux City, Iowa. Ultimately, the letters were returned to the OLR as undeliverable. Attorney Fadner did not respond to J.R.'s grievance.

¶ 51. With respect to this matter, the referee concluded that Attorney Fadner's failure to respond to J.R.'s pleas for assistance in answering the ERD's information requests and his general failure to respond to J.R.'s requests for information about the status of the case, had violated SCR 20:1.4(a). The referee further found that by failing to assist J.R. with obtaining another attorney after Attorney Fadner's suspension, by failing to return J.R.'s file, and by failing to refund any portion of the $2500 advance fee, Attorney Fadner had violated SCR

75

20:1.16(d). In addition, Attorney Fadner's failure to notify J.R. of the suspension of his license constituted a violation of SCR 22.26(1)(a) and (b), which also violated SCR 20:8.4(f). Finally, the referee determined that Attorney Fadner's failure to respond to the OLR's investigative requests had violated SCR 22.03(2), thereby also violating SCR 20:8.4(f).

¶ 52.   The final four counts of the complaint, Counts 42–45, relate to Attorney Fadner's representation of Donald B., who retained Attorney Fadner in March 2002 to prosecute an employment discrimination claim. Donald B. paid $2500 as an advance fee to Attorney Fadner at that time.

¶ 53.   In May 2002 Attorney Fadner filed a discrimination complaint with the ERD. In March 2003 Attorney Fadner requested a right to sue letter from the federal Equal Employment Opportunity Commission (EEOC). In response, on June 9, 2003, the EEOC mailed to Donald B. and Attorney Fadner a notice of right to sue his former employer. The notice specifically stated that any lawsuit by Donald B. under the federal Age Discrimination in Employment Act had to be filed within 90 days of Donald B.'s receipt of the notice.

¶ 54.   There was some delay in Donald B.'s receipt of this letter as it had to be forwarded to his current address. Attorney Fadner received his copy of the notice on June 19, 2003. Around July 10, 2004,[17] Donald B.

---

[17] This is the date stated in the referee's report, which adopted the factual allegations of the OLR's complaint, including the July 10, 2004 date, as its findings of fact. This date appears to be a mistake or typographical error, with the correct date being July 10, 2003, based on the remainder of the report's discussion of this representation. As noted in ¶ 57, Attorney Fadner sent a letter in January 2004 that acknowledged that he had by that time received notice of Donald B.'s receipt of the

notified Attorney Fadner about his receipt of the right to sue letter.

¶ 55.   According to Attorney Fadner's billing statements, his office did no work on the preparation of a summons and complaint on Donald B.'s behalf during the months of June, July and August 2003. The first work indicated in the billing statements occurred on September 15, 2003. On September 17, 2003, Attorney Fadner filed a discrimination complaint in federal district court. This was 100 days after the EEOC had mailed its right to sue letter.

¶ 56.   Donald B. paid Attorney Fadner an additional $2000 in advance fees in November 2003. The merits of Donald B.'s claim, however, were never considered. The former employer filed a summary judgment motion based on the untimeliness of Donald B.'s complaint.

¶ 57.   When Donald B. questioned the reason for the employer's motion, Attorney Fadner sent a January 28, 2004 letter to Donald B. attempting to explain why the employer had challenged the timeliness of the complaint. Attorney Fadner's letter stated that the complaint had been timely filed based on his receipt of the EEOC's right to sue letter, but the employer was basing its challenge on Donald B.'s receipt, which Attorney Fadner claimed was unknown to his office "until long after the complaint was filed." This was a false statement. Attorney Fadner's office received a copy of the right to sue notice sent to Donald B. months before the complaint was filed.

---

EEOC letter, but which falsely claimed that he had not learned of Donald B.'s receipt of the letter until after the filing of the complaint in federal district court. In light of this January 2004 letter, Attorney Fadner could not have first learned of Donald B.'s receipt of the EEOC letter around July 10, 2004.

¶ 58. Ultimately, the federal district court granted the employer's motion and dismissed Donald B.'s complaint as untimely. Donald B. subsequently tried on numerous occasions to obtain a copy of his file from Attorney Fadner, but received no response from Attorney Fadner. After the OLR mailed a letter to Attorney Fadner about Donald B.'s grievance, Attorney Fadner did advise Donald B. that he could retrieve a copy of his file at a Staples office supply store if he paid them a copying charge of $89.23.

¶ 59. In March and April 2005 the OLR sent at least three letters to Attorney Fadner about the grievance filed by Donald B. Attorney Fadner never responded to the OLR.

¶ 60. Donald B. submitted a claim to the Fund, which reimbursed him for the $4500 he had advanced to Attorney Fadner.

¶ 61. Based on these facts, the referee concluded that Attorney Fadner's failure to file Donald B.'s federal complaint on a timely basis, which led to the dismissal of his claim, had violated SCR 20:1.3. In addition, Attorney Fadner's failure to respond to Donald B.'s multiple requests for his file and his providing a copy of the file only after Donald B. paid copying charges violated SCR 20:1.16(d). The referee further found that Attorney Fadner had violated SCR 20:8.4(c) when he falsely stated in his January 28, 2004 letter that his office had not known about Donald B.'s receipt of the right to sue letter until after the filing of the complaint. Finally, the referee concluded that Attorney Fadner's failure to respond to the OLR's investigative letters had violated SCR 22.03(2), thereby also violating SCR 20:8.4(f).

¶ 62. On the basis of these factual findings and legal conclusions of professional misconduct, which we adopt, we agree that the license of Attorney Fadner to practice law in this state must be revoked. The findings disclose a pattern by Attorney Fadner of accepting advance fees from clients and then doing little or no work. Attorney Fadner's lack of diligence has caused serious harm to a number of his clients. Moreover, this is the third time that Attorney Fadner has been the subject of discipline for professional misconduct.

¶ 63. In addition to the revocation of Attorney Fadner's license to practice law, the referee recommended that Attorney Fadner should be required to pay restitution in the total amount of $12,500 to the Fund for the reimbursement payments that it made to Darryl B., R.B., K.F., J.R. and Donald B.

¶ 64. On October 13, 2006, the court issued an order directing the OLR and Attorney Fadner to show cause why the court should not also order Attorney Fadner to pay restitution to G.T. and D.R. The OLR responded that it believed restitution to those clients would be appropriate. No response to the October 13, 2006 order was filed by Attorney Fadner. In light of Attorney Fadner's failure to provide any meaningful services to those clients, we determine that he should pay restitution for the advance fees that he collected from them: $1000 from G.T. and $1200 from D.R.

¶ 65. IT IS ORDERED that the license of Thomas A. Fadner, II, to practice law in Wisconsin is revoked, effective the date of this order.

¶ 66. IT IS FURTHER ORDERED that Thomas A. Fadner, II, comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

¶ 67.   IT IS FURTHER ORDERED that within 60 days of the date of this order, Thomas A. Fadner, II, make restitution payments to the Wisconsin Lawyers' Fund for Client Protection in the amount of $12,500, to client G.T. in the amount of $1000, and to client D.R. in the amount of $1200.

¶ 68.   IT IS FURTHER ORDERED that within 60 days of the date of this order, Thomas A. Fadner, II, pay to the Office of Lawyer Regulation the costs of this proceeding.

¶ 69.   IT IS FURTHER ORDERED that restitution to clients G.T., D.R., and to the Wisconsin Lawyers' Fund for Client Protection is to be completed prior to paying costs to the Office of Lawyer Regulation.