# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP486-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against<br>William R. Lamb, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>        Complainant-Respondent,<br>    v.<br>William R. Lamb,<br>        Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST LAMB

| | |
|---|---|
| OPINION FILED: | June 9, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2012AP486-D

STATE OF WISCONSIN                    :          IN SUPREME COURT

**In the Matter of Disciplinary Proceedings**
**Against William R. Lamb, Attorney at Law:**

**Office of Lawyer Regulation,**                                      **FILED**

       **Complainant-Respondent,**

    **v.**                                                                **JUN 9, 2015**

**William R. Lamb,**
                                                                          Diane M. Fremgen
      **Respondent-Appellant.**                           Clerk of Supreme Court

---

ATTORNEY  disciplinary  proceeding.  *Attorney's license revoked.*

¶1   PER CURIAM. Attorney William R. Lamb has appealed from the report of the referee, Attorney James R. Erickson, which found, based on Attorney Lamb's stipulation and no contest plea, that Attorney Lamb had engaged in 75 counts of professional misconduct arising out of ten client representations, that his license to practice law in Wisconsin should be revoked, that he should be required to pay restitution in the total amount of $21,580, and that he should be required

to pay the full costs of this disciplinary proceeding, which were $8,875.90 as of September 16, 2014.

¶2 Having considered the referee's report, the briefs of the parties, and the record in this matter, we determine that the referee's factual findings based on Attorney Lamb's stipulation are not clearly erroneous. We reject Attorney Lamb's request that he be relieved of the stipulation he entered so that the matter can be remanded to the referee and Attorney Lamb can now present evidence to "correct the record." We further conclude that the referee's factual findings support his conclusions of misconduct on the 75 counts alleged against Attorney Lamb. Given Attorney Lamb's pervasive pattern of misconduct, including forging his client's name in order to convert the client's settlement funds, we determine that it is necessary to revoke Attorney Lamb's license to practice law in this state. We also agree with the referee's recommendation that Attorney Lamb should be ordered to make restitution to the clients he has harmed and to pay the full costs of this disciplinary proceeding.

¶3 Attorney Lamb was admitted to the practice of law in this state in April 1989. He maintained a solo legal practice in Menomonie. His license has been suspended for administrative reasons and for failure to cooperate with disciplinary investigations since the fall of 2011.

¶4 This is the fourth time that Attorney Lamb has been the subject of professional discipline. The first two instances resulted in consensual private reprimands. In 1997 Attorney

2

Lamb received a consensual private reprimand for failing to provide requested information during a disciplinary investigation. Private Reprimand No. 1997-10. In 2003 Attorney Lamb received a second consensual private reprimand for misconduct involving a failure to communicate the basis or rate of his fee to a client, a failure to maintain trust account records which would have shown whether he had placed an advanced fee into a client trust account or had immediately cashed the checks for his own use, and a failure to provide his client's file to successor counsel in a timely manner. Private Reprimand No. 2003-28.

¶5 The third prior disciplinary matter resulted in a 60-day suspension of Attorney Lamb's license. In re Disciplinary Proceedings Against Lamb, 2011 WI 101, ¶2, 338 Wis. 2d 1, 806 N.W.2d 439 (Lamb I). In that proceeding, Attorney Lamb stipulated that he had committed 21 counts of professional misconduct arising out of four client representations. Attorney Lamb's actions tended to follow a general pattern. He often accepted advanced fees, which he failed to hold in trust or for which he failed to provide the notices required for the alternative advanced fee procedure under Supreme Court Rule (SCR) 20:1.15(b)(4m). He then refused to or failed to keep his clients reasonably informed about the status of their legal matters, often ignoring multiple requests for information from the clients. When the clients attempted to obtain a refund of fees and a return of their files, Attorney Lamb either failed to respond or failed to comply with their

3

requests. When the Office of Lawyer Regulation (OLR) asked for information regarding the clients' grievances, Attorney Lamb failed to cooperate properly with the OLR's investigations.

¶6 The OLR initiated this proceeding by filing a complaint and order to answer on March 7, 2012. The original complaint alleged 23 counts of misconduct arising out of four client representations. Attorney Lamb filed an answer, which admitted some of the allegations of the complaint but contended that the claims of misconduct were without merit and alleged specific facts contradicting some of the complaint's allegations.

¶7 On February 8, 2013, the OLR filed an amended complaint alleging the 75 counts of misconduct referenced above. Attorney Lamb filed an answer that again admitted some of the factual allegations of the amended complaint, denied most of the allegations, provided Attorney Lamb's view of the various client representations, and denied that he had violated any rules of professional conduct, other than perhaps failing to place certain advanced fees into his client trust account. Attorney Lamb's answer to the amended complaint also alleged that he had additional personal information that he would seek to provide to the referee or the OLR and for which a protective order would be appropriate.

¶8 In November 2013, Attorney Lamb entered into a stipulation with the OLR. In the stipulation, Attorney Lamb withdrew his answer to the OLR's amended complaint and pled no contest to each of the 75 counts of misconduct, "as set forth in

4

the Amended Complaint." Specifically, Attorney Lamb agreed that the referee "may use the allegations of the Amended Complaint as an adequate factual basis in the record for a determination of misconduct as to each misconduct count to which [Attorney] Lamb has pled no contest." In the stipulation, Attorney Lamb explicitly verified that he understood the misconduct allegations and his right to contest those allegations, that he understood his right to consult with counsel but had decided to proceed on a pro se basis, and that his entry into the stipulation was knowing and voluntary.

¶9 The stipulation also called for the matter of the appropriate sanction to be the subject of briefs to be submitted by the parties. The OLR filed a sanction brief, but Attorney Lamb never did so.

¶10 Based on the stipulation Attorney Lamb entered, the referee issued a report containing findings of fact based on the allegations of the amended complaint. He determined that those facts supported conclusions of law that Attorney Lamb had engaged in the ethical violations alleged in the 75 counts set forth in the amended complaint. The referee agreed with the uncontested recommendation in the OLR's sanction brief that Attorney Lamb's license to practice law in Wisconsin should be revoked. He also recommended that Attorney Lamb should be required to pay restitution to three individual clients, as well as to the Wisconsin Lawyers' Fund for Client Protection (the Fund), which had already made payments to five other clients.

5

¶11 It is not necessary to recount the extensive factual findings made by the referee regarding each of the ten client representations at issue in this proceeding. A summary of one representative example is sufficient to provide an accurate picture of the types of misconduct found by the referee with respect to most of the representations.

¶12 In November 2010 Attorney Lamb was retained by client M.B. to represent him in attempting to set aside a sheriff's sale of M.B.'s property following the entry of a judgment against M.B. As part of the oral agreement for representation, Attorney Lamb requested an advanced fee of $1,000 for the representation. M.B. initially paid $500 in cash to Attorney Lamb and then sent him a check for the remaining $500 three days later. Attorney Lamb did not deposit the $1000 advanced fee into his client trust account nor did he provide any of the notices required by the alternative advanced fee procedure.

¶13 Several weeks later Attorney Lamb entered an appearance in the foreclosure action. He did not, however, take any further action on M.B.'s behalf. Over the next several weeks, M.B. telephoned Attorney Lamb multiple times, seeking information about the status of the matter. Attorney Lamb failed to return M.B.'s calls. Ultimately, M.B. left multiple messages with Attorney Lamb, repeatedly requesting a refund of the $1000 advanced fee he had paid to Attorney Lamb.

¶14 Because Attorney Lamb did not provide any refund of the advanced fee, M.B. filed a claim with the Fund. The Fund

6

subsequently reimbursed M.B. for the $1000 advanced fee he had paid to Attorney Lamb.

¶15 M.B. also filed a grievance with the OLR, which forwarded the grievance to Attorney Lamb and asked for a response to the substance of the grievance, an accounting of his fee, and a copy of his file. When Attorney Lamb did not respond, the OLR e-mailed a second letter and personally served a third letter, each time asking for a response to its requests. Attorney Lamb still did not respond.

¶16 On July 10, 2012, the OLR filed a motion seeking a temporary suspension of Attorney Lamb's license. This court issued an order directing Attorney Lamb to show cause why his license should not be temporarily suspended due to his willful failure to cooperate with the OLR's investigation. See SCR 22.03(4). When Attorney Lamb did not respond to the order, this court temporarily suspended Attorney Lamb's license on September 17, 2012. That temporary suspension has remained in effect until the issuance of this opinion and order.

¶17 Another matter addressed in the referee's report also merits discussion. Attorney Lamb agreed to represent R.M., a friend, who had been injured in a December 2004 automobile accident. Attorney Lamb did not prepare a written fee/representation agreement. In December 2007, Attorney Lamb filed a personal injury lawsuit on R.M.'s behalf. By early 2008 Attorney Lamb informed R.M. that the defendants had made a settlement offer. R.M. instructed Attorney Lamb to complete the settlement.

7

¶18 Over the ensuing years, R.M. asked Attorney Lamb on multiple occasions about the status of the settlement. Attorney Lamb's responses falsely indicated that the settlement was close to being finalized, but he otherwise deferred answering questions about it. In early 2012, after confronting Attorney Lamb about the settlement, R.M. obtained a copy of the settlement check from one of the defendants. The check showed that it had been issued on March 20, 2008, made payable to "[R.M.] A SINGLE INDIVIDUAL AND HIS ATTORNEY OF RECORD." On the back of the check were endorsements for "[R.M.]" and "William R. Lamb, for deposit only." R.M.'s endorsement signature on the back of the check had been forged. R.M. never received any of the settlement funds from Attorney Lamb.

¶19 Although the settlement proceeds belonged to R.M., Attorney Lamb had not deposited the proceeds into his client trust account. He also never notified R.M. that he had received the settlement proceeds or provided R.M. with an accounting of those proceeds.

¶20 After learning of the conversion of the settlement proceeds, R.M. filed a grievance with the OLR in February 2012. The OLR again sent a notice of formal investigation to Attorney Lamb, once more asking that he respond to the allegations in the grievance, that he provide an accounting of his fee, and that he submit a copy of his file for the matter. Although Attorney Lamb sent an email indicating that he had received the OLR's letter, he did not provide a response as requested. The OLR sent two additional letters to Attorney Lamb via e-mail and by

8

personal service, but Attorney Lamb did not respond. The OLR included this matter in its July 10, 2012 motion for a temporary suspension. Thus, this matter was also a basis for the court's September 17, 2012 temporary suspension order.

¶21 In all, the referee concluded that Attorney Lamb had committed 84 separate violations of 19 different subsections of the Rules of Professional Conduct for Attorneys:[1]

- SCR 20:1.3[2]—eight counts (lack of reasonable diligence)
- SCR 20:1.4(a)(2)[3]—one count (failure to consult with client regarding the means by which the client's objectives are to be accomplished)

---

[1] Some of the 75 counts set forth in the complaint alleged violations of multiple subsections of the ethical rules.

[2] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[3] SCR 20:1.4(a) provides:

A lawyer shall:

(1) Promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in SCR 20:1.0(f), is required by these rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests by the client for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer

(continued)

- SCR 20:1.4(a)(3)—nine counts (failure to keep client reasonably informed about status of matter)

- SCR 20:1.4(a)(4)—nine counts (failure to comply with reasonable client requests for information)

- SCR 20:1.4(b)[4]—one count (failure to explain a matter so client may make informed decisions)

- SCR 20:1.5(a)[5]—seven counts (collection of an unreasonable fee)

---

knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

[4] SCR 20:1.4(b) provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[5] SCR 20:1.5(a) provides:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(continued)

- SCR 20:1.5(b)(1)[6]—five counts (failure to communicate in writing to client the basis or rate of fees and expenses)

- SCR 20:1.5(b)(2)—five counts (failure to communicate in writing to client the purpose and effect of advanced fee)

---

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[6] SCR 20:1.5(b) provides:

(1) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate as in the past.  If it is reasonably foreseeable that the total cost of representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.

(2) If the total cost of representation to the client, including attorney's fees, is more than $1000, the purpose and effect of any retainer or advance fee that is paid to the lawyer shall be communicated in writing.

(3) A lawyer shall promptly respond to a client's request for information concerning fees and expenses.

11

- SCR 20:1.5(b)(3)—four counts (failure to respond to client requests regarding fees and expenses)

- SCR 20:1.15(b)(1)[7]—one count (failure to hold client's property in trust)

- SCR 20:1.15(b)(4)[8]—eight counts (failure to hold advanced fees in trust until earned where alternative procedure not used)

- SCR 20:1.15(d)(1)[9]—one count (failure to notify client of receipt of funds in which client has interest)

---

[7] SCR 20:1.15(b)(1) provides that

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[8] SCR 20:1.15(b)(4) provides:

Except as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

[9] SCR 20:1.15(d)(1) provides:

Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to

(continued)

- SCR 20:1.15(d)(2)[10]—one count (failure to provide accounting of trust funds after final distribution or upon client request)

- SCR 20:1.16(d)[11]—seven counts (failure to refund unearned advanced fees upon termination of representation)

- SCR 20:4.1(a)(1)[12]—one count (making false statement of material fact or law to third party)

- SCR 20:8.4(b)[13]—one count (committing criminal acts)

---

the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[10] SCR 20:1.15(d)(2) provides that "[u]pon final distribution of any trust property or upon request by the client or a 3rd party having an ownership interest in the property, the lawyer shall promptly render a full written accounting regarding the property."

[11] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[12] SCR 20:4.1(a)(1) provides that in the course of representing a client, a lawyer shall not knowingly "make a false statement of a material fact or law to a 3rd person."

[13] SCR 20:8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

- SCR 20:8.4(c)[14]—five counts (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation)

- SCR 22.03(2) and (6),[15] enforced via SCR 20:8.4(h)[16]—nine counts (failure to cooperate with disciplinary investigation)

---

[14] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[15] SCR 22.03(2) and (6) provide:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

. . . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[16] SCR 20:8.4(h) provides that it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

14

- SCR 22.26(1)(a), (b), and (c),[17] enforced via SCR 20:8.4(f)[18]—one count (failure to notify client, opposing counsel, and court of license suspension)

¶22 In attorney disciplinary proceedings, we affirm the referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine

---

[17] SCR 22.26(1) provides, in relevant part:

On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

(a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation.

(b) Advise the clients to seek legal advice of their choice elsewhere.

(c) Promptly provide written notification to the court or administrative agency and the attorney for each party in a matter pending before a court or administrative agency of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation. The notice shall identify the successor attorney of the attorney's client or, if there is none at the time notice is given, shall state the client's place of residence.

[18] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

15

the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶23 The primary thrust of Attorney Lamb's appeal is that the factual record on which the referee relied is erroneous and incomplete, despite the fact that Attorney Lamb stipulated that the referee could rely on those facts. Attorney Lamb contends that he was informed that once the formal complaint was filed, the only options he had were to admit or deny entire allegations as set forth in the complaint. He asserts that during the time period of the OLR's investigation and of the determination by the Preliminary Review Committee (PRC) as to whether there was cause to proceed with specific charges in a formal complaint, he was impaired by alcoholism, which prevented him from submitting evidence to the OLR and which, in turn, prevented the PRC from considering the full panoply of facts when it made its cause-to-proceed determinations on specific misconduct charges.

¶24 Attorney Lamb acknowledges that he entered into a stipulation. He claims, however, that since he had been unable to participate fully in the investigation process, he felt that once the complaint had been filed, he had no choice but to enter into a stipulation.

¶25 Attorney Lamb further argues that, regardless of his responsibility for cooperating with the OLR's investigation and ensuring that both the OLR and the referee had a proper

16

understanding of all relevant facts, the OLR has a duty to ensure that there is an accurate record in a disciplinary proceeding.

¶26 Attorney Lamb also states that he is not challenging the factual findings with respect to all ten of the client representations at issue. To the contrary, he is challenging the facts as to only six of the representations, and with respect to one of those representations, he is seeking to modify the factual findings solely on the issue of whether he earned the advanced fees paid by the client. He offers one example. He contends that he "put a great deal of effort" into representing D.L., including negotiating a settlement with the district attorney's office. Attorney Lamb, however, provides only his unsupported and broad allegation to this effect. He offers no specifics and does not provide any evidence that he believes should be added to the record to support such a claim. He does not offer even general allegations as to what is inaccurate with respect to the other five client representations.

¶27 The relief sought by Attorney Lamb to remedy the alleged inaccuracies in the record is a remand to the referee for further development of the factual record. In essence, Attorney Lamb is asking that he be relieved of the stipulation he entered and that he be placed in the position he occupied prior to that stipulation, where he could litigate all of the alleged factual inaccuracies in the OLR's amended complaint.

17

¶28 We reject Attorney Lamb's arguments and requested relief. He fails to convince us that there is any legal basis for voiding the stipulation he entered and restarting the litigation of this matter.

¶29 Although Attorney Lamb asserts that he was impaired by his alcoholism during the time that the OLR was conducting its investigation and presenting the results of that investigation to the PRC, he does not claim that his subsequent entry into the stipulation was unknowing or involuntary due to his alcoholism. The time period for the initial investigatory stage of this matter ended, at the very latest, in February 2013 when the OLR filed its amended complaint, adding a number of client representations and alleged ethical violations. Attorney Lamb, however, did not enter into the stipulation until November 2013. He never expressly contends that he was impaired at that time, which is the relevant time period for determining whether he should be granted relief from the stipulation he entered. In a motion Attorney Lamb filed with this court in May 2014, he asserted that he had sought treatment for his alcoholism in 2012. Indeed, in an April 2014 email message to the referee, which the referee treated as an objection to the imposition of costs, Attorney Lamb specifically stated that he had been impaired by his alcoholism "until sometime later on in 2012." Thus, according to Attorney Lamb's own admission, his impairment was no longer an impediment to responding to the charges in this matter after the latter part of 2012, a year before he entered into the stipulation. There is simply no basis in the record to

18

conclude that Attorney Lamb's earlier problems with alcohol dependency rendered his November 2013 decision to enter into the stipulation unknowing or involuntary.

¶30 In addition, although Attorney Lamb claims there are factual inaccuracies in the record, he does not identify the alleged inaccuracies with specificity or provide evidence to demonstrate the inaccuracy. He simply asks this court to take him at his word that if the court were to remand the matter back to the referee, he would now produce evidence that would refute some of the allegations in the amended complaint.

¶31 Attorney Lamb, however, already had ample opportunity to present such evidence to the OLR and to the referee. Even if the OLR would not have changed the charges in its amended complaint, that does not mean that it was futile to submit the evidence. The proceedings before the referee are designed to find the facts as to what occurred. Attorney Lamb clearly recognized that fact because his answer to the amended complaint did deny a substantial number of the OLR's allegations and did contain some of the same contentions regarding the work he performed for his clients. He intentionally forfeited his right to contest the OLR's factual allegations, however, when he signed a stipulation that the referee could use the factual allegations of the amended complaint as the referee's factual findings that formed the basis for determining that he had committed the ethical violations alleged in the 75 counts of the amended complaint.

19

¶32 Moreover, even if Attorney Lamb's concern about the alleged inaccuracies in the record relates solely to the level of discipline and to the imposition of restitution, he was given the opportunity to bring the alleged inaccuracies to the referee's attention in connection with his sanction brief. He could have submitted the additional evidence he now claims to have to the referee as part of an argument that his misconduct is not as serious as it appears, but he never filed any sanction brief.

¶33 In the end, Attorney Lamb has not presented a valid basis for essentially vacating the referee's report and voiding the stipulation he entered. Thus, we find no basis to overturn any of the referee's factual findings as clearly erroneous. We further determine that the referee's factual findings adequately support the legal conclusion that Attorney Lamb engaged in the ethical violations contained in the 75 counts of the amended complaint.

¶34 Having established the number of violations, we now consider the appropriate level of discipline. Other than asserting that he has additional evidence that would show some work was done for certain clients, Attorney Lamb's brief does not contain an argument regarding the appropriate level of discipline. He cites no prior cases as support for the imposition of any particular level of discipline. Indeed, he specifically states in his brief that he is "not arguing or suggesting that the ultimate outcome will be different,"

although he notes there is a possibility it could be different if a remand to the referee were ordered.

¶35 After considering the totality of the factors present in this proceeding, we conclude that the revocation of Attorney Lamb's license to practice law in this state is appropriate and necessary. Attorney Lamb forged his client's signature so he could convert over $10,000 in settlement funds to his own use and then hid that fact from his client and friend for nearly four years. That is an exceedingly serious breach of an attorney's core responsibility to a client. There is also a clear pattern of misconduct by Attorney Lamb, both within the client representations at issue in this proceeding and between this proceeding and Lamb I. For example, Attorney Lamb repeatedly accepted advanced fees from clients, did little or no work on those clients' matters, and repeatedly ignored requests by the clients for information about their legal matters, often resulting in significant harm to the clients. When the clients filed grievances against Attorney Lamb, he repeatedly failed to respond to the OLR's attempts to gather information from him. Throughout the great majority of the proceedings before the referee and on appeal before this court, Attorney Lamb failed to express real remorse for what he did. Only at the eleventh hour, when he thought this court was about to decide his case, did Attorney Lamb file a letter to the court offering his "sincere apology" for the hurt he had left in his wake. Although that expression of remorse is a positive step, even then Attorney Lamb still couched his apology in the context of

21

his alcoholism, although he presented no evidence before the referee that alcoholism had caused all or even some of his misconduct, including his forgery of a client's signature and theft of over $10,000. In the end, the balance of facts requires revocation.

¶36 A revocation of Attorney Lamb's law license is consistent with other disciplinary cases in which we have revoked an attorney's license. See, e.g., In re Disciplinary Proceedings Against Kelly, 2012 WI 55, 341 Wis. 2d 104, 814 N.W.2d 844 (revocation imposed where attorney found to have committed 51 counts of misconduct, including failure to exercise diligence, failure to communicate with clients, failure to refund advanced fees when work not completed, and failure to respond to OLR requests for information); In re Disciplinary Proceedings Against Fadner, 2007 WI 18, 229 Wis. 2d 54, 727 N.W.2d 20 (revocation imposed where attorney with one prior private reprimand and a previous nine-month suspension engaged in 45 counts of misconduct arising out of ten representations).

¶37 We now turn to the issue of restitution. We agree with the referee that Attorney Lamb should be required to pay restitution to the Fund in the amount of $17,500, which the Fund

paid to clients T.L., B.B., M.B., R.M., and W.B.[19] In addition, we agree that he should also pay restitution directly to clients D.L. ($2,730), E.R. ($850), and B.O. ($500).

¶38 Finally, we consider Attorney Lamb's appeal from the referee's recommendation that he pay the full costs of this disciplinary proceeding. Attorney Lamb makes essentially two arguments as to why he should not have to pay the full costs of the proceeding.

¶39 First, Attorney Lamb alleges that the costs could have been reduced if there had been some sort of settlement discussion or a mediation session between himself and the OLR. He contends that this would have allowed him to present the evidence he had not been able to present during the investigation phase due to his alcoholism. He also asserts that such settlement discussions would have resulted, based in part on his alleged new evidence, in a negotiated settlement, which would have eliminated some of the costs incurred in litigating this matter. He contends that he held the impression that, once a formal complaint had been filed, the OLR could not or would

---

[19] In his letter to the court filed on December 17, 2014, Attorney Lamb claimed that he had reimbursed the Fund for its payment to R.M. The OLR has not responded to this assertion. Without a finding of fact or a stipulation on this matter, we will still utilize the $17,500 total for restitution to the Fund set forth in the referee's report. Of course, if Attorney Lamb has already reimbursed the Fund for the payment it made to R.M. or any other payments, he should be credited accordingly.

not consider any of his additional evidence outside of the context of an evidentiary hearing or a formal mediation session.

¶40 To the extent that Attorney Lamb is suggesting that the OLR should have engaged in plea bargaining with him to reduce the amount of litigation expenses, this court's position has been not to allow plea bargaining in attorney disciplinary cases. See, e.g., Inglimo, 305 Wis. 2d 71, ¶85. The OLR would have been operating with that understanding.

¶41 The lack of plea bargaining, however, does not mean that Attorney Lamb was powerless to present his evidence to the OLR, even during the pendency of a formal disciplinary proceeding. Indeed, there was a period of discovery in this matter. If Attorney Lamb had evidence in his possession that would have demonstrated that he did not commit certain alleged ethical violations, he could have produced that evidence during discovery (or really at any time). In his supplemental report regarding costs, the referee specifically stated that, while the OLR had not over-litigated the case or engaged in excessive discovery, Attorney Lamb had "neglected to cooperate in providing required discovery" to the OLR.

¶42 In addition, while the OLR is not authorized to engage in plea bargaining, it always has the ability to ask for the dismissal of certain counts if it determines that the evidence on those counts does not meet the clear, satisfactory, and convincing standard. See SCR 22.16(5). Indeed, our opinions document that the OLR has moved for dismissal of some pending counts on prior occasions while the case was still before the

24

referee. See, e.g., In re Disciplinary Proceedings Against Mandelman, 2014 WI 100, ¶4, 358 Wis. 2d 179, 851 N.W.2d 401 (OLR dismissed 23 counts due to evidentiary problems during pre-hearing phase of disciplinary proceeding); In re Disciplinary Proceedings Against Ruppelt, 2014 WI 53, ¶1, 354 Wis. 2d 738, 850 N.W.2d 1 (OLR voluntarily dismissed a count pursuant to stipulation); In re Disciplinary Proceedings Against Mulligan, 2009 WI 12, ¶9, 315 Wis. 2d 605, 759 N.W.2d 766 (after filing complaint OLR moved to dismiss one count and to modify a second count). Consequently, we do not reduce the costs due to Attorney Lamb's claim that he could not present his alleged new evidence to the OLR, which allegedly extended the length of the disciplinary proceeding. The proceeding was lengthened, if at all, by Attorney Lamb's own choice or his failure to act.

¶43 Attorney Lamb's second argument against the imposition of full costs is that he lacks the current financial ability to pay them. He has provided no evidence, however, to support this assertion. Thus, we do not have a basis in this record to reduce the amount of the cost obligation. Further, "[t]he court's general policy in such situations is to direct the attorney to provide financial information to the OLR and to try to negotiate a payment plan for the payment of costs over time." In re Disciplinary Proceedings Against Balistrieri, 2014 WI 104, ¶67, 358 Wis. 2d 262, 852 N.W.2d 1; see also, In re Disciplinary Proceedings Against Harman, 2005 WI 89, ¶¶7-12, 282 Wis. 2d 199, 698 N.W.2d 697 (court ordered attorney who claimed a lack of finances to negotiate a reasonable payment schedule with the OLR

and then imposed such a schedule). We conclude that we should again follow that policy in this situation.

¶44 IT IS ORDERED that the license of William R. Lamb to practice law in Wisconsin is revoked, effective the date of this order.

¶45 IT IS FURTHER ORDERED that within 60 days of the date of this order, to the extent he has not already done so, William R. Lamb shall pay restitution to the Wisconsin Lawyers' Fund for Client Protection in the amount of $17,500.00, to client D.L. in the amount of $2,730.00, to client E.R. in the amount of $850.00, and to client B.O. in the amount of $500.00.

¶46 IT IS FURTHER ORDERED that within 60 days of the date of this order, William R. Lamb shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶47 IT IS FURTHER ORDERED that payment of restitution to the individual clients and to the Wisconsin Lawyers' Fund for Client Protection is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶48 IT IS FURTHER ORDERED that William R. Lamb shall comply, if he has not already done so, with the requirements of SCR 22.26 pertaining to the duties of a person whose license to practice law in Wisconsin has been revoked.