**2025 WI 47**

# Supreme Court of Wisconsin



IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
MICHAEL B. PADDEN, ATTORNEY AT LAW

OFFICE OF LAWYER REGULATION,

*Complainant,*

*v.*

MICHAEL B. PADDEN,
*Respondent.*

No. 2024AP2110-D

Decided November 12, 2025

ATTORNEY DISCIPLINARY PROCEEDING

¶1    PER CURIAM.    In this reciprocal discipline matter, we consider what sanction we should impose on Attorney Michael B. Padden as discipline reciprocal to the disbarment ordered by the Minnesota Supreme Court in August 2024. For the reasons discussed below, we determine that revocation of Attorney Padden's Wisconsin law license is appropriate reciprocal discipline. Because we are resolving this matter without appointing a referee, no costs are imposed.[1]

---

[1] We note that on October 22, 2025, the parties filed a stipulation that we rejected by order of November 6, 2025. In that order, we returned the parties to the positions they occupied before filing the stipulation, as set forth in their pleadings and briefs in this proceeding.

Per Curiam

¶2     Attorney Padden was admitted to practice law in Wisconsin in 2002. He was admitted to practice law in Minnesota in 1986. Attorney Padden has not been the subject of previous professional discipline in Wisconsin. According to the Minnesota Supreme Court decision that forms the basis of this reciprocal disciplinary action, *In re Disciplinary Action Against Padden*, 10 N.W.3d 291 (Minn. 2024), Attorney Padden has the following disciplinary history in Minnesota:

- In 1996, Attorney Padden received a private admonition for failing to enter into a written contingent fee agreement with a client and failing to return that client's file upon request.

- In 2017, Attorney Padden received a public reprimand for agreeing to settle a case without his client's consent, failing to communicate the settlement agreement to the client, providing financial assistance to his client, and making a false statement to the court.

- In 2019, Attorney Padden received a private admonition for failing to deposit advanced costs into a trust account and failing to maintain receipts of cash payments, countersigned by the payor.

*Id.* at 294.

¶3     On January 17, 2023, the Director of the Office of Lawyers Professional Responsibility (Director) in Minnesota filed a petition and a supplementary petition for disciplinary action against Attorney Padden. *Id.* at 293. Attorney Padden answered the initial petition, but he failed to answer the supplementary petition. *Id.* at 293-94. Based on Attorney Padden's failure to answer, the referee deemed the allegations in the supplementary petition admitted. *Id.* at 294. After a three-day evidentiary hearing in October 2023, the referee found that Attorney Padden had committed additional misconduct based on the allegations in the initial petition, and that he had failed to prove the existence of any mitigating factors. *Id.* at 294, 301-02. Ultimately, the referee recommended that Attorney Padden be disbarred. *Id.* at 294.

¶4     Attorney Padden appealed. The Minnesota Supreme Court agreed with the referee's recommendation for disbarment. It based its decision solely on the allegations deemed admitted in the supplementary

petition, which it held were "serious enough—on their own—to warrant disbarment." *Id.* at 295. The matters deemed admitted are as follows.

¶5   In one client matter, Attorney Padden was subject to a fee agreement that, by its terms, required him to return $25,000 in fee payments to the client due to the outcome of the case. *Id.* at 295. Attorney Padden met with the client in custody and asked the client's permission to retain the $25,000. *Id.* The client declined. *Id.* When the client's wife asked for the money to be returned, Attorney Padden sent her an amendment to the fee agreement that appeared to be executed by Attorney Padden and the client. *Id.* But Attorney Padden had never presented this amendment to the client, and the client did not execute the amendment or agree that Attorney Padden could retain the $25,000. *Id.* Instead, the client's signature on the amendment was forged. *Id.* Ultimately, Attorney Padden returned no portion of the $25,000 to the client or his wife, which caused them serious financial harm. *Id.* The Minnesota Supreme Court concluded that Attorney Padden committed misconduct by creating a forged fee agreement purportedly entitling himself to $25,000 and failing to remit any portion of those funds; by making knowingly false representations to the client's wife; and by making knowingly false representations to the Director in sending her the forged fee agreement in connection with her investigation and claiming that the client signed the agreement. *Id*. at 295-96.

¶6   In the second client matter, a client retained Attorney Padden and signed a fee agreement, pursuant to which the client paid an $8,500 advance fee. *Id.* at 296. Attorney Padden did not obtain a receipt countersigned by the client for this payment, and he did not deposit the fee into his trust account. *Id.* Three days after retaining Attorney Padden, the client terminated the representation and requested a full refund, which Attorney Padden refused, claiming that he had spent more than 30 hours on the matter and that the $8,500 was a "lump sum." *Id.* The Minnesota Supreme Court concluded that Attorney Padden committed misconduct by failing to obtain a receipt countersigned by the client; by failing to refund the unearned portion of the $8,500 flat fee; and by failing to deposit the $8,500 advance fee into his trust account until earned. *Id.*

¶7   In the third client matter, Attorney Padden represented a client in several cases for a $5,000 flat fee. *Id.* A few months later, Attorney Padden withdrew from each case, though they were pending, and failed to refund the unearned portion of the fee. *Id.* The Minnesota Supreme Court

concluded that Attorney Padden committed misconduct by failing to refund the unearned portion of the $5,000 flat fee. *Id.*

¶8 The Minnesota Supreme Court also held that Attorney Padden committed misconduct in four additional client matters by failing to appear for at least five court hearings, including twice failing to appear for a client's plea hearing, failing to appear for another client's sentencing hearing, and failing to appear for another client's criminal trial. *Id.* at 296-97.

¶9 Finally, the Minnesota Supreme Court held that Attorney Padden committed misconduct by failing to cooperate with the Director's investigation of his trust account and client matters. *Id.* at 297.

¶10 The Minnesota Supreme Court agreed with the referee that no mitigating factors were present, and that disbarment was the appropriate discipline for Attorney Padden's misconduct. *Id.* at 299-302.

¶11 The Office of Lawyer Regulation (OLR) filed a complaint against Attorney Padden and an order to answer on October 17, 2024. The OLR complaint alleged that by virtue of the Minnesota disbarment, Attorney Padden is subject to reciprocal discipline in Wisconsin pursuant to SCR 22.22. The OLR complaint included a motion asking this court to issue an order directing Attorney Padden to show cause why any of the exceptions to reciprocal discipline in SCR 22.22(3)[2] applied and why reciprocal discipline should not be imposed. Attorney Padden accepted service of the complaint and order to answer on November 12, 2024.

---

[2] SCR 22.22(3) states: "The supreme court shall impose identical discipline or license suspension unless one or more of the following is present:

(a) The procedure in the other jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process.

(b) There was such an infirmity of proof establishing the misconduct or medical incapacity that the supreme court could not accept as final the conclusion in respect to the misconduct or medical incapacity.

(c) The misconduct justifies substantially different discipline in this state."

¶12     As best as we can discern from the record, Attorney Padden served the OLR with a timely pro se answer to the complaint, but he did not file his answer with the clerk of this court. We later directed Attorney Padden to place his answer on file. His answer did not follow the format of specifically responding to each paragraph of the OLR's complaint by admitting, denying, or explaining why he did not admit or deny the allegations contained therein. *See generally* SCR 22.16(1); Wis. Stat. § 802.02. It instead was in the nature of a brief in which Attorney Padden highlighted his professional accomplishments and derided the Minnesota disciplinary process as a "farcical" one, "whereby when an attorney faces public discipline because of this no-justice process, he/she has no shot at justice, and as the process evolves, including a trial, a so-called evidentiary hearing, is a formality where the attorney has no chance of receiving fair treatment [sic]." Attorney Padden went so far as to claim that the Minnesota disciplinary agency's investigation of him is "perhaps the most egregious example of mistreatment of a lawyer . . . in Minnesota history" and "maybe in US history."

¶13     By order of January 21, 2025, this court directed Attorney Padden to inform the court in writing within 20 days of any claim by him, predicated upon the grounds set forth in SCR 22.22(3), that the imposition of discipline reciprocal to that imposed in Minnesota would be unwarranted, and of the factual basis for any such claim.

¶14     On February 10, 2025, Attorney Padden filed a pro se document titled "Amended Answer," which he claimed to have filed "[a]t the direction of this Court." We assume, therefore, that Attorney Padden intended this document to serve as his response to this court's January 21, 2025 order.

¶15     Although titled as an "Amended Answer," this document (like Attorney Padden's original answer) did not conform to the usual format of an answer, but instead was in the nature of a brief in which Attorney Padden again highlighted his professional accomplishments and again indulged in hyperbole regarding the supposed unfairness of the Minnesota disciplinary proceedings. He claimed, for example, that he "was a victim of an unethical witch-hunt," and that "what happened to [him] is most likely the most egregious example of lack of due process and unethical conduct in Minnesota history by a lawyer-supervising entity and perhaps so shocking that it could be one of the top examples of unethical conduct in United States history."

¶16 Due to this alleged injustice, Attorney Padden claimed in his Amended Answer that two of the exceptions to reciprocal discipline under SCR 22.22(3) are present: that the procedure in Minnesota was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process, and that the misconduct justifies substantially different discipline in this state than that imposed in Minnesota. *See* SCR 22.22(3)(a), (c). At the conclusion of his Amended Answer, Attorney Padden "respectfully request[ed] that this matter proceed forward with the appointment of an individual to address these matters in Wisconsin with an adjudication on the merits." It appeared that by this request, Attorney Padden sought the appointment of a referee pursuant to SCR 22.22(5).[3]

¶17 In a June 2, 2025 order, we instructed the OLR to file a response to Attorney Padden's "Amended Answer," and to comment specifically on the propriety of a referral of this case to a referee for a hearing and a report and recommendation, as Attorney Padden appeared to request in his Amended Answer. *See* SCR 22.22(5).

¶18 After considering the OLR's response, we issued an order on August 12, 2025, stating that we would "decline Attorney Padden's request to appoint a referee in this matter" because "[o]ur review of the parties' filings in this matter reveals no genuine disputes of material facts that would preclude us from deciding, on briefs only, whether reciprocal discipline is appropriate." We therefore solicited briefs from the parties regarding whether the exceptions to reciprocal discipline under SCR 22.22(3)(a) and (c) apply here, as alleged by Attorney Padden in his "Amended Answer."

¶19 Notwithstanding the language in our August 12, 2025 order stating that the court would decide this matter on briefs and without a hearing, Attorney Padden, now represented by counsel, has filed a brief asking the court to "refer the matter to a referee for a hearing and a report

---

[3] SCR 22.22(5) states: "The supreme court may refer a complaint filed under sub. (2) to a referee for a hearing and a report and recommendation pursuant to SCR 22.16. At the hearing, the burden is on the party seeking the imposition of discipline or license suspension different from that imposed in the other jurisdiction to demonstrate that the imposition of identical discipline or license suspension by the supreme court is unwarranted."

and recommendation . . . , unless the Court determines on its own that identical discipline is unwarranted." Attorney Padden asserts that "[s]hould this matter be referred to a referee, the evidence will show that Attorney Padden did not do what the [Minnesota disciplinary authority] claimed that he did, and that in fact he was the subject of what can euphemistically be described as selective prosecution." Attorney Padden then submits an "offer of proof" consisting of a largely exonerating version of the facts and a promise that "[i]f this matter proceeds to an evidentiary hearing, Attorney Padden is prepared to present numerous exhibits and witnesses who can support the points made herein." He claims that the evidence would show he committed only minor ethical violations, at most.

¶20 Attorney Padden's request for an evidentiary hearing before a referee to prove his relative innocence shows a misunderstanding of our role. In this reciprocal disciplinary proceeding, we are not finding facts that might justify discipline in the first instance, nor are we sitting in appellate review over the Minnesota disciplinary proceedings. Our remit is narrow. The Minnesota disbarment decision is "conclusive evidence" that Attorney Padden committed the misconduct described therein, and we "shall impose the identical discipline" barring the presence of any of the three exceptions listed in SCR 22.22(3)(a)-(c). *See* SCR 22.22(3), (4). Although one of these exceptions allows a respondent-lawyer to avoid reciprocal discipline on the ground of an "infirmity of proof" in the original disciplining jurisdiction (*see* SCR 22.22(3)(b)), Attorney Padden has not explicitly invoked that exception, and for good reason:  with the facts of his misconduct cemented by his default in the Minnesota proceedings, there is no infirmity-of-proof defense available to him here. Our reciprocal discipline rules preclude that kind of end-run. *See In re Disciplinary Proceedings Against Selmer*, 227 Wis. 2d 85, 97, 595 N.W.2d 373 (1999) ("[A] reciprocal disciplinary proceeding does not afford an attorney the opportunity to relitigate misconduct allegations that have been heard and decided in another jurisdiction or to litigate the validity of the disciplinary proceeding in that jurisdiction.") Nor are there any unsettled facts regarding the remaining two exceptions to the presumption of reciprocal discipline, discussed below. We therefore re-affirm what we previously held:  there are no factual disputes that would warrant a hearing before a referee.

¶21 This leaves us to evaluate the two exceptions to reciprocal discipline that Attorney Padden has explicitly invoked:  SCR 22.22(3)(a) and (c). For the reasons explained below, we hold that neither exception applies here.

¶22     As for Attorney Padden's claim under SCR 22.22(3)(a)—that the Minnesota disciplinary proceedings deprived him of due process—we have held that disciplinary proceedings comport with due process so long as "the attorney had a full and fair opportunity to litigate the misconduct allegations in the proceeding." *Selmer*, 227 Wis. 2d at 97. The Minnesota disciplinary system provided this to Attorney Padden. There is no dispute that he was notified of the allegations against him; he participated in a days-long hearing before a referee; and he appealed that referee's recommendation to the Minnesota Supreme Court via written and oral argument. Clearly Attorney Padden had a full and fair opportunity to defend himself. That the effect of his own litigation effort in Minnesota was to admit the allegations in the supplementary petition is not a due process problem but rather the guaranteed result of Minnesota's disciplinary rules. *See* Rule 13(b) of the Minnesota Rules on Lawyers Professional Responsibility (MRLPR) ("If the respondent fails to file an answer . . . , the petition's allegations shall be deemed admitted . . . ."). And although Attorney Padden argues, under the guise of due process violations, that various aspects of the Minnesota disciplinary process were unfair—the referee was biased, the prosecution was vindictive, the evidence he would have presented had he not been held in default would have exonerated him, etc.—these complaints do not give rise to true due process concerns, either. They are collateral attacks on the Minnesota disbarment decision, improper here. *See Selmer*, 227 Wis. 2d at 96–97.

¶23     We move, then, to the remaining exception to reciprocal discipline—whether the misconduct justifies substantially different discipline in Wisconsin than the disbarment that Minnesota imposed.  SCR 22.22(3)(c). A complicating factor in this analysis is that "disbarment" is not an available sanction in the Wisconsin disciplinary system. *See* SCR 21.16(1m). So, this court must first determine what sanction in Wisconsin is the functional equivalent of disbarment. *See, e.g., In re Disciplinary Proceedings Against Moree*, 2004 WI 118, 275 Wis. 2d 279, 281, 684 N.W.2d 667 (concluding that a particular form of reciprocal discipline "does effectuate 'identical discipline' under the terms of SCR 22.22(3) because it replicates the practical effect of the [foreign jurisdiction's] disciplinary order . . . "). Then the court must determine whether Attorney Padden's misconduct merits a substantially different sanction in Wisconsin.

¶24     Turning to the first determination, we note that we have previously recognized revocation in Wisconsin as "identical discipline" to disbarment in Minnesota. *In re Disciplinary Proceedings Against Jones*, 2016

WI 86, ¶¶6, 10, 372 Wis. 2d 23, 886 N.W.2d 92; *In re Disciplinary Proceedings Against Rothstein*, 2010 WI 30, ¶¶1, 5-6, 324 Wis. 2d 37, 781 N.W.2d 490. Without citing but consistent with this precedent, the OLR alleged in its complaint that "[d]isbarment in Minnesota is equivalent in effect to a Wisconsin revocation," and asked this court to revoke Attorney Padden's Wisconsin license "as discipline reciprocal to that imposed upon him in Minnesota."

¶25    In its subsequent briefing to this court, however, the OLR veers off on a different course. It asserts that while "none of the grounds stated in SCR 22.22(3) are applicable," both "Wisconsin precedent" and "a closer review of Minnesota's rules" has led the OLR "to conclude that a *six month suspension* of Padden's Wisconsin law license is the more equivalent discipline to Minnesota's disbarment." (Emphasis added.)

¶26    As best as we can discern, the reason the OLR now believes that the sanction it originally sought—revocation—is not functionally equivalent to disbarment in Minnesota is that the rules governing reinstatement from these sanctions are different in the two states. For a disbarred lawyer in Minnesota, there is no prescribed waiting period for seeking reinstatement after disbarment. Rather, as explained more below, the lawyer must satisfy various conditions, such as passing the Minnesota bar exam (unless the Minnesota Supreme Court waives this requirement) and satisfying continuing legal education requirements and subrogation obligations. *See* MRLPR Rules 18(e)(1) and (4). By contrast, a revoked lawyer in Wisconsin must wait five years after revocation to seek reinstatement. *See* SCR 22.29(2). Because of this discrepancy in reinstatement rules—one with an explicit waiting period, one without—the two sanctions are not analogs, the OLR seems to claim.

¶27    As for why it believes a *six-month* suspension in Wisconsin—not a longer term—is functionally equivalent to disbarment in Minnesota, the OLR seems to depend on *In re Disciplinary Proceedings Against Laumann*, 2019 WI 3, 385 Wis.2d 152, 922 N.W.2d 520 (2019), a reciprocal discipline case in which the parties stipulated that a six-month suspension in Wisconsin was appropriate reciprocal discipline for an indefinite suspension in Maryland that required the lawyer to be deemed "fit to practice law by a medical provider" before seeking reinstatement. *See id.* at ¶¶5, 12. After citing *Laumann* and comparing Attorney Padden's misconduct to that involved in various Wisconsin cases, the OLR writes: "The range of discipline for Padden's misconduct would potentially be

from a suspension of six months to revocation in Wisconsin. However, in the context of a reciprocal disciplinary proceeding, the reinstatement procedures in both jurisdictions render six-month suspension in Wisconsin as the closest equivalent to the Minnesota disbarment."

¶28    Not surprisingly, Attorney Padden agrees with the OLR's downshift from a requested revocation to a requested six-month suspension. He, too, suggests that "a six-month suspension in Wisconsin is the closest thing we have to Minnesota's disbarment."

¶29    We disagree. For starters, the structure of the two states' disciplinary rules describing the types of available discipline make clear that disbarment in Minnesota is not equivalent to suspension in Wisconsin, and certainly not a six-month one. Both states' rules contain a hierarchy of discipline, with the most severe discipline listed first and the least severe listed last. Disbarment (in Minnesota) and revocation (in Wisconsin) are listed first within their respective hierarchies, with suspension listed as a lesser form of discipline. *Compare* MRLPR 15(a)(1)-(2) with SCR 21.16(1m)(a)-(b). That disbarment is the strongest sanction available in Minnesota is confirmed by the very decision under review. *See In re Disciplinary Action Against Padden*, 10 N.W.3d at 298 (holding that "disbarment—the most severe discipline we impose—is the appropriate discipline for the allegations deemed admitted in the supplementary petition" against Attorney Padden). By comparison, a six-month suspension in Wisconsin is not close to the strongest *suspension* available in Wisconsin, much less the strongest *sanction*. *Cf. In re Disciplinary Proceedings Against Voss*, 2011 WI 2, 331 Wis. 2d 1, 795 N.W.2d 415 (suspending a lawyer for a period of four years and eight months).[4]

¶30    It is true, as the OLR emphasizes, that the Minnesota rules do not prescribe a waiting period for seeking reinstatement after disbarment.

---

[4] That disbarment and suspension have entirely different meanings is confirmed by the American Bar Association Standards for Imposing Lawyer Sanctions (ABA Standards). Disbarment "is the most severe sanction" as it "terminates the individual's status as a lawyer," whereas suspension "is an intermediate level of discipline " that involves "the removal of a lawyer from the practice of law for a specified minimum period of time." ABA Standard 2.2, 2.3, and accompanying Annotations.

But the absence of such a prescribed waiting period carries nowhere near the significance that the OLR places upon it given the way reinstatement from disbarment in Minnesota operates in practice. It is a purposefully slow-moving process with limited chances of success. The Minnesota Supreme Court has explained that while it "should be slow to disbar," it "should be even more cautious in readmitting an attorney to a position of trust." *In re Smith*, 19 N.W.2d 324, 326 (Minn. 1945). "[R]einstatement after disbarment is the rare exception to the rule." *In re Reinstatement of Ramirez*, 719 N.W.2d 920, 924 n.4 (Minn. 2006) (noting that in the 21 years previous to the decision, the court had disbarred 57 attorneys and reinstated only four). Among other things, "[t]he petitioning attorney is required to provide stronger proof of good character and trustworthiness that is required in the original application for admission to practice." *In re Reinstatement of Anderley*, 696 N.W.2d 380, 385 (Minn. 2005). In addition, unless specifically waived by the Minnesota Supreme Court, the petitioning attorney must successfully complete the Minnesota bar exam and the Multistate Professional Responsibility Examination, complete continuing legal education requirements, and satisfy all claims made against him or her by the Minnesota Client Security Board. *See* MLRPR 18(e)(1), (2), (4). The length of time since disbarment must be considered in evaluating a reinstatement petition, *Anderley*, 696 N.W.2d at 385, and if reinstatement is granted, it typically occurs many years after disbarment occurred. *See In re Reinstatement of Sand*, 951 N.W.2d 918, 924–25 (Minn. 2020) (reinstating a lawyer eight years after disbarment); *In re Lieber*, 834 N.W.2d 200, 208-210 (Minn. 2013) (same); *In re Reinstatement of Ramirez*, 719 N.W.2d at 925-26 (same); *In re Reinstatement of Anderley*, 696 N.W.2d at 382, 386 (13 years); *In re Trygstad*, 472 N.W.2d 137, 139-40 (Minn. 1991) (seven-and-a-half years); *In re Wegner*, 417 N.W.2d 97, 98, 100 (Minn. 1987) (eight years). Thus, focusing on its practical effect, disbarment in Minnesota is in no way analogous to a six-month suspension in Wisconsin—a common suspension term for a disciplined lawyer to both receive and gain reinstatement from.[5]

---

[5] If Attorney Padden had been suspended in Minnesota for a term longer than six months—say, three years—it is not unreasonable to assume that the OLR would have sought an identical suspension term of three years. *See* SCR 22.22(3). But here, where Attorney Padden received a *stronger* sanction—indeed the most severe sanction in Minnesota—the OLR requests only a six-month suspension. The OLR's rationale for this comparatively modest sanction is unconvincing.

¶31    Rather than a six-month suspension, we conclude that revocation in Wisconsin is the functional equivalent to disbarment in Minnesota. Both forms of discipline are the most serious and long-lasting sanction available in their respective states. As noted above, recognizing revocation in Wisconsin as analogous to disbarment in Minnesota is consistent with our past practice. *See Jones*, 372 Wis. 2d 23, ¶¶6, 10; *Rothstein*, 2010 WI 30, 324 Wis. 2d 37, ¶¶5-6. And although the OLR correctly notes that we have imposed a six-month suspension as discipline reciprocal to a Maryland indefinite suspension, *see Laumann*, 385 Wis.2d 152, the fact that an indefinite suspension in Maryland is a step down from disbarment in Maryland makes that case of limited usefulness here. *See, e.g., Attorney Grievance Comm'n v. Lee*, 903 A.2d 895, 906 (Md. 2006) (holding that "[i]ndefinite suspension from the practice of law is the proper sanction . . . where the attorney's conduct is not so egregious that only disbarment can adequately protect the public"). We therefore decline the parties' invitation to hold that the differences in the two states' reinstatement processes render these comparable sanctions non-comparable. *Cf. In re Disciplinary Proceedings Against Kleinsmith*, 2018 WI 50, ¶8 n.2, 381 Wis. 2d 486, 912 N.W.2d 114 (noting that revocation in Wisconsin is "nearly identical" to disbarment in Colorado even though the waiting periods for reinstatement in the two states differ (eight years in Colorado versus five years in Wisconsin)).

¶32    This brings us to the last step in our analysis. We must determine whether the Wisconsin equivalent of Minnesota's disbarment—revocation—is "substantially different" from the discipline that this court would impose for similar misconduct. *See* SCR 22.22(3)(c). The word "substantial" is important in this analysis. To show that this exception applies, Attorney Padden must show not just that revocation is outside the range of discipline we would impose if this case originated here, but that it is *substantially* outside that range. On this record, then, Attorney Padden must show that revocation is substantially different from the discipline that we would impose for a thrice-disciplined lawyer who has now been determined to have misappropriated client funds, forged his client's signature to conceal the misappropriation, failed to return unearned client fees, neglected client matters, and failed to cooperate with the disciplinary investigation—all in the absence of any mitigating evidence. *See Padden*, 10 N.W.3d 291.

¶33    Attorney Padden has not made this showing, and indeed points to no arguably analogous cases that would benefit his cause. This is

not surprising; while no Wisconsin case contains the exact same facts as Attorney Padden's situation, our precedent establishes that revocation is not outside the range of sanctions that we would impose for similar misconduct in Wisconsin, much less substantially so. *See, e.g., In re Disciplinary Proceedings Against Schatz*, 2005 WI 10, 278 Wis. 2d 18, 693 N.W.2d 299 (revoking license of attorney with no disciplinary history who, among other things, converted a $5,000 payment from one client and forged another client's signature on a settlement check, failed to hold several clients' property in trust and separate from attorney's property, failed to refund unearned fees to several clients upon termination of representation, and failed to represent several clients diligently); *see also In re Disciplinary Proceedings Against Lamb*, 2015 WI 52, 362 Wis. 2d 345, 864 N.W.2d 794 (revoking license of attorney with a disciplinary history who, among other things, forged a client's signature so he could convert over $10,000 in settlement funds to his own use and then hid that fact from his client; repeatedly accepted advanced fees from clients but did little or no work on the matters and ignored clients' requests for information; and failed to respond to attempts by the OLR to gather information).

¶34 Thus, we hold that the imposition of the reciprocal discipline of revocation of Attorney Padden's license to practice law in Wisconsin is warranted. Because this matter has been resolved without the appointment of a referee and because the OLR does not request the imposition of costs, we do not impose them in this proceeding.

¶35 IT IS ORDERED that the license of Michael B. Padden to practice law in Wisconsin is revoked, effective the date of this order.

¶36 IT IS FURTHER ORDERED that, to the extent he has not already done so, Michael B. Padden shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.